CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 29, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ E. Jones**
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. T.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 7:25-cv-00509 |
| v. | ) | |
| | ) | REPORT & |
| COMMISSIONER OF SOCIAL | ) | RECOMMENDATION |
| SECURITY, | ) | |
| | ) | By: C. Kailani Memmer |
|     Defendant. | ) | United States Magistrate Judge |

Plaintiff Christopher G. T. (Christopher), by counsel, challenges the final decision of the Commissioner of Social Security (Commissioner) finding that his disability ended on December 19, 2018, and therefore he was ineligible for continued disability insurance benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument, and oral argument will not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence

---

[1] Due to privacy concerns, I use only the first name and initials of the claimant in Social Security opinions.

as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## <u>CLAIM HISTORY</u>

Christopher was born in 1971 and earned a general educational development certificate. R. 194, 2097. On April 2, 2004, Christopher was found disabled with a disability onset date of March 31, 2003. R. 13. On December 19, 2018, pursuant to 20 C.F.R. § 404.1590(a), a continuing disability review determined Christopher's DIB should end in February 2019 because of his health improvements and ability to work. R. 86. On September 9, 2019, upon reconsideration, the disability hearing officer denied Christopher's request to continue his DIB. R. 98, 107. On September 18, 2019, Christopher requested an ALJ hearing regarding his continuing disability review, R. 114, and the hearing was held on January 21, 2020. R. 40. At the, Christopher was represented

2

by counsel, R. 43, and Mark Hileman testified as a vocational expert. R. 66-69. Christopher's friend and employer, David Rider, also testified. R. 63-65.

On February 20, 2020, the ALJ issued an "Unfavorable Decision" analyzing Christopher's claim under the eight step process,[2] which is used to determine whether a claimant's eligibility for disability benefits continues or ends, finding his disability ended on December 19, 2018, and determining he had not become disabled again since December 19, 2018. R. 31. At step one, the ALJ found Christopher was not engaged in

---

[2] The five-step process, pursuant to 20 C.F.R. § 404.1520(a)(4), for evaluating whether a claimant has a disability is different from the eight step process, pursuant to 20 C.F.R. § 404.1594(f), for evaluating whether a claimant's eligibility for disability benefits continues or ends. "In determining whether the claimant is **still disabled**, the ALJ must follow an eight step evaluation process." *Blizard v. Comm'r of Soc. Sec.*, No. 1:24-cv-00124, 2025 WL 2779164, at *2 (W.D.N.C. Sept. 29, 2025) (emphasis added) (citing 20 C.F.R. § 404.1594(f)). (1) At step one, the ALJ determines whether claimant is engaged in substantial gainful activity; (2) at step two, the ALJ decides whether claimant impairment or combination of impairments meets or equals the severity of an impairment listed in appendix 1 of this subpart; (3) at step three, the ALJ adjudicates whether claimant had a medical improvement, as defined at 20 C.F.R. § 404.1594(b)(1), as shown by a decrease in medical severity, and if there has been no decrease in medical severity, there has been no medical improvement; (4) at step four, if there has been medical improvement, then the ALJ decides whether it is related to claimant's ability to do work in accordance with 20 C.F.R. § 404.1594(b)(1)-(4); (5) at step five, if the ALJ found at step three that there was no medical improvement or if the ALJ found at step four that the medical improvement is not related to claimant's ability to work, then the ALJ will consider whether any of the exceptions in 20 C.F.R. § 404.1594(d)-(e) apply; (6) at step six, if medical improvement is shown to be related to claimant's ability to do work or if one of the exceptions pursuant to 20 C.F.R. § 404.1594(d)-(e) applies, then the ALJ determines whether all of claimant's current impairments in combination are severe, and the ALJ's determination will consider all of claimant's current impairments and the impact of the combination of those impairments on claimant's ability to function, so if the evidence shows that claimant's current impairments in combination do not significantly limit claimant's physical or mental abilities to do basic work activities, then these impairments will not be considered severe in nature and thus claimant will no longer be considered disabled; (7) at step seven, if claimant's impairment(s) are severe, then the ALJ will assess claimant's ability to conduct substantial gainful activity, pursuant to 20 C.F. R. § 404.1560, and the ALJ will assess claimant's RFC based on claimant's current impairments and consider whether claimant can still do work that claimant did in the past, and if claimant can do such work, disability will be found to have ended; (8) at step eight, if claimant is not able to do work that claimant was able to do in the past, then the ALJ will consider whether claimant can do other work given the RFC assessment conducted pursuant to 20 C.F.R. § 404.1594(f)(7) and given claimant's age, education, and past work experience, and if claimant can do other work given the RFC assessment and claimant's age, education, and past work experience, then the ALJ will find that claimant's disability ended; and (9) the ALJ may proceed to step nine if the evidence about claimant's past relevant work is not sufficient for the ALJ to make a finding under 20 C.F.R. § 404.1594(f)(7) about whether claimant can perform your past relevant work, so if the ALJ finds that claimant can adjust to other work based solely on claimant's age, education, and RFC, then the ALJ will find claimant is no longer disabled, but if the ALJ finds claimant may be unable to adjust to other work or if 20 C.F.R. § 404.1562 may apply, then the ALJ will assess claimant's claim under 20 C.F.R. § 404.1594(f)(7) and make a finding about whether claimant can perform claimant past relevant work. 20 C.F.R. § 404.1594(f).

substantial gainful activity.[3] R. 15. At step two, the ALJ determined that since December 19, 2018, Christopher had no impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

At step three, the ALJ found that the medical evidence supported his finding that Christopher had a medical improvement because there was a decrease in the medical severity of his impairments when comparing his impairments with the comparison point decision (CPD) on April 2, 2004, with the continued disability review on December 19, 2018.[4] R. 20. At step four, the ALJ found Christopher's medical improvement was related to his ability to work because, according to the ALJ, his medical improvement increased his RFC. R. 21.

At step six,[5] the ALJ found Christopher had the following severe impairments: (1) asymptomatic human immunodeficiency virus (HIV), (2) hepatitis B, (3) hepatitis C, (4)

---

[3] The relevant Social Security regulation provides that the "work you are doing may be done under special conditions that take into account your impairment . . . If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity." 20 C.F.R. § 404.1573(c). Here, Christopher reported special conditions for his work: His work as a janitor for his friend's, Mr. Rider, company, Realstar Realtors, was "light duty" and "part-time." R. 48. The ALJ noted Christopher did not have any earnings in 2019, so the ALJ found Christopher's work for Realstar Realtors did not constitute substantial gainful activity. R. 15–16.

[4] The term "comparison point decision" means the "most recent favorable medical decision" regarding claimant's eligibility for DIB. 20 C.F.R. § 404.1594(b)(7). "The Commissioner bears the burden to 'show that a medical improvement has occurred, and that the improvement relates to the claimant's ability to work.'" *Allen B. v. Saul*, No. 4:20-cv-00002, 2021 WL 827143, at *2 (W.D. Va. Mar. 4, 2021) (quoting *Edwards v. Astrue*, No. 4:12-cv-5, 2012 WL 6082898, at *3 (W.D. Va. Dec. 6, 2012)). "To establish medical improvement, a comparison must be made between the claimant's current condition and her condition at the time of the" comparison point decision. *Brittany G. v. Colvin*, No. 2:23-cv-06168, 2025 WL 438812, at *8 (D.S.C. Jan. 21, 2025) (citing 20 C.F.R. § 404.1594(b)(7)), *report and recommendation adopted sub nom. Brittany G. v. Comm'r of the Soc. Sec. Admin.*, No. 2:23-cv-06168, 2025 WL 435914 (D.S.C. Feb. 6, 2025).

[5] For the eight step evaluation pursuant to 20 C.F.R. § 404.1594(f), the ALJ in this case appropriately omitted step five because if the ALJ determined at step four that claimant's medical improvement is related to claimant's ability to work, then the ALJ should proceed from step four to step six pursuant to 20 C.F.R. § 404.1594(f)(4). *Elliott v. Kijakazi*, No. 7:20-cv-96, 2021 WL 4497916, at *5 (E.D.N.C. Sept. 16, 2021) ("[b]ecause the ALJ determined at step four that Plaintiff's medical improvement

asthma, (5) degenerative disc disease of the lumbar spine, and (6) degenerative joint disease of the left shoulder. *Id.* Also, at step six, the ALJ found Christopher had four non-severe impairments: (1) chronic kidney disease, (2) anxiety, (3) depression, and (4) post-traumatic stress disorder (PTSD). R. 21-22.

At step seven, the ALJ found Christopher had the RFC to perform light work[6] with the following exceptions:

> [H]e can occasionally reach overhead to the left. **The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds.** The claimant can never work at unprotected heights. He can occasionally work around hazardous machinery; in humidity and wetness; in dust, odors, fumes and pulmonary irritants; or in extreme cold.

R. 22 (emphasis added). Also, at step seven, the ALJ determined that Christopher was unable to perform past relevant work. R. 29. At step eight, based on the testimony of Mr. Hileman, the ALJ identified the following jobs, which exist in significant numbers in the national economy, that Christopher can perform: (1) marker, (2) router, and (3) clothing bagger. R. 29-31.

---

is related to his ability to work, the ALJ proceeded from step four to step six pursuant to 20 C.F.R. § 404.1594(f)(4)"), *report and recommendation adopted*, No. 7:20-cv-00096, 2021 WL 4497153 (E.D.N.C. Sept. 30, 2021).

[6] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Thus, the ALJ determined Christopher's disability ended on December 19, 2018, and he had not become disabled again since that date. R. 31. Christopher's appeal to the Appeals Council was denied on October 8, 2020. R. 1. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Analysis section below.

## ANALYSIS

### I.   Summary of the Parties' Arguments and the Court's Conclusions

Christopher raises three assignments of error and several subsidiary arguments. (Pl.'s Br., ECF No. 17, at 32-48.) Christopher asserts the ALJ's assessment of his physical impairments, RFC findings, and determination that his disability ended on December 19, 2018, are not supported by substantial evidence. (*Id.* at 33.) Importantly, Christopher avers that the "ALJ failed to perform a function by function analysis in determining plaintiff's RFC." (*Id.* at 39.) Significantly, Christopher also argues the "ALJ failed to conduct a function by function analysis and failed to make specific findings regarding plaintiff's absences from work and difficulty sitting, standing, and walking or his need to lie down during the day due to fatigue." (*Id.* at 37–38.) Christopher avers that the "ALJ recites evidence regarding plaintiff's impairments but does not build a logical bridge between the evidence and his physical RFC findings as required under SSR 96-8p." (*Id.* at 39.) Further, Christopher maintains that the ALJ's assessment of his mental impairments is not supported by substantial evidence. (*Id.* at 40.) Moreover, Christopher contends the ALJ's assessment of his subjective allegations is not supported by substantial evidence. (*Id.* at 42.)

The Commissioner responds that the ALJ properly accounted for Christopher's physical limitations in the RFC; substantial evidence supports the ALJ's evaluation of his mild mental impairments; and the ALJ appropriately evaluated his subjective allegations. (Def.'s Br., ECF No. 21, at 5-14.)

As a preview of the analysis below, I find the ALJ erred in failing to perform adequate function analyses of Christopher's ability to sit, walk, and stand.

## II.    The ALJ failed to conduct function analyses, pursuant to 20 C.F.R. § 404.1545, *Mascio*, and *Monroe*, of Christopher's relevant functions of sitting, standing, and walking

As noted above, Christopher argues that the ALJ committed a reversible error because the ALJ failed to perform function analyses of his ability to sit, walk, and stand. (Pl.'s Br., at 37-38.) Moreover, Christopher contends the ALJ failed to build a logical bridge between the evidence and his conclusions. (Pl.'s Br., at 39.) For the reasons below, I agree.

### 1.    Pursuant to 20 C.F.R. § 404.1545, *Mascio*, and *Monroe*, ALJs Are Required to Perform Function Analyses of Relevant and Contested Functions

The relevant Social Security regulation provides that ALJs must formulate an RFC based on relevant function analyses of the claimant's ability to, *inter alia*, sit, stand, and walk.

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as **sitting, standing, walking**, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545 (emphasis added). Also, SSR 96-8p requires that an ALJ's RFC assessment must address exertional and non-exertional capacities of the claimant. SSR 96-8p, 1996 WL 374184, *5. Moreover, SSR 96-8p provides that ALJs must evaluate a claimant's exertional capacities: "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: **Sitting, standing, walking**, lifting, carrying, pushing, and pulling. Each function must be considered separately." *Id.* (emphasis added).

The Fourth Circuit held "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Monroe*, 780 F.3d at 636 (ellipsis original) (quoting *Cichocki,* 729 F.3d at 177); Thus, ALJs are not required to perform function analyses of "'irrelevant or uncontested'" functions. *Ralph A. v. Bisignano*, No. 5:24-cv-00710, 2025 WL 3113640, at *5 (S.D.W. Va. Oct. 10, 2025) (quoting *Mascio*, 780 F.3d at 636), *report and recommendation adopted*, No. 5:24-cv-00710, 2025 WL 3113201 (S.D.W. Va. Nov. 6, 2025) ("[w]hile an ALJ is not required to explicitly discuss 'irrelevant or uncontested' functions, '[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review'").

To determine whether the ALJ should have conducted a function analysis, courts consider the evidence in the record and whether the function is contested by plaintiff. *See Jennifer W. v. Kijakazi*, No. 1:22-cv-01177, 2023 WL 2245635, at *3 (D. Md. Feb. 27, 2023) ("[b]ased on the evidence in the record and Plaintiff's contentions, it is clear that

these functions are relevant to the ALJ's RFC analysis, and the ALJ should have performed a proper function-by-function analysis regarding these functions"); *Dichiara v. O'Malley*, No. 3:23-cv-00285, 2024 WL 3220728, at *4 (W.D.N.C. June 27, 2024) (brackets omitted) ("if a function is contested by the parties, then 'assessing the Claimant's ability to perform said function is critically relevant to determining his disability status'") (citing *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021), *superseded by regulation on other grounds as stated in Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596 (4th Cir. 2025)).

In a function analysis "the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination." *Connie B. v. Kijakazi*, No. 7:22-cv-00260, 2023 WL 3959922, at *7 (W.D. Va. June 12, 2023) (citing SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)); *Davis v. Bisignano*, No. 5:24-cv-648, 2026 WL 852124, at *3 (E.D.N.C. Mar. 27, 2026) ("ALJs must explain their RFC findings regarding contested functional abilities when conducting the required function-by-function analysis") (citing *Dowling*, 986 F.3d at 388–89). The function analysis must build a logical bridge between the evidence and the ALJ's conclusions. *Jon S. v. Kijakazi*, No. 1:22-cv-02513, 2023 WL 5242346, at *4 (D. Md. Aug. 15, 2023) (brackets omitted) ("in performing the function-by-function analysis, the ALJ must 'build an accurate and logical bridge from the evidence to her conclusions'") (quoting *Monroe*, 826 F.3d at 189); *Taliesha W. v. Berryhill*, No. 1:18-cv-00278, 2019 WL 337581, at *2 (D. Md. Jan. 28, 2019) ("in performing the function-by-function analysis, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion") (internal quotation marks and brackets omitted)  (quoting SSR 96-8p, 1996 WL 374184, at *7). Also, the ALJ "cannot express RFC in exertional levels of work—such as 'light' work or 'medium' work—

9

until he or she performs an adequate function-by-function analysis." *Richard S. v. O'Malley*, No. 5:22-cv-00060, 2024 WL 467584, at *15 (W.D. Va. Feb. 7, 2024) (quoting *Dowling*, 986 F.3d at, 387).

After *Mascio* and *Monroe*, district courts in the Fourth Circuit remand when ALJs fail to conduct relevant function analyses of a claimant's ability to sit, stand, and walk. *See Salzer v. Kijakazi*, No. 5:21-cv -197, 2022 WL 3594519, at *5 (E.D.N.C. Aug. 23, 2022) ("in the absence of a function-by-function analysis of Claimant's ability to sit, stand, and walk, the court cannot trace the ALJ's reasoning in the RFC determination, and the error requires remand"); *Williams v. Berryhill*, No. 1:16-cv-00064, 2017 WL 927256, at *3 (W.D.N.C. Mar. 8, 2017) (remanding because the ALJ failed to perform relevant function analyses of the claimant's ability to sit, stand, and walk); *Inman v. Berryhill*, No. 7:17-cv-182, 2018 WL 7324920, at *4 (E.D.N.C. Nov. 29, 2018) (recommending remand because the ALJ failed to perform the relevant function analysis of the claimant's ability to walk and stand), *report and recommendation adopted*, No. 7:17-cv-182, 2019 WL 637767 (E.D.N.C. Feb. 14, 2019).

### 2. Christopher's Ability to Sit, Walk, and Stand Are Relevant and Contested Functions

As summarized below, the record shows that Christopher's ability to sit, walk, and stand are relevant functions which the ALJ should have considered in determining the appropriate RFC.

In August 2019, at LewisGale Medical Center, Daniel Sapp, DO, and Andrew Galvin, nurse practitioner, advised Christopher to "avoid prolonged sitting" because it worsened his lower back pain. R. 1621, 1380. In May 2022, at a medical appointment with

Ryan Smith, MD, of the University of Virginia Health System, Christopher alleged movement made his lower back pain worse. R. 2977.

In December 2013, at a medical appointment, Christopher complained that his lower back pain was exacerbated by walking. R. 1371. At a medical appointment in March 2020, Christopher experienced shortness of breath because of walking. R. 2970. At another medical appointment in March 2020, Christopher later alleged he no longer walked to work. R. 2970. However, in October 2021, at a medical appointment Christopher claimed he walked daily. R. 2701. In March 2024, at a medical appointment, Christopher alleged movement and sitting exacerbated his pain. R. 3199.

In March 2023, at a medical appointment, Christopher commented to healthcare providers that prolonged standing during work caused him pain. R. 3219. In September 2023, at a medical appointment, Christopher reported standing caused a dull and aching pain in his back. R. 3207.

In a function report from April 2019, Christopher reported his illnesses, injuries, and conditions impaired his ability to sit, stand, and walk. R. 237. Christopher noted he could walk for up to 30-45 minutes, but his severe lower back pain required him to, *inter alia*, take a break for 10-15 minutes after walking. *Id.*

In a medical consultant report from October 2018, William Humphries, MD, opined that in a review of systems Christopher reported he had "pain in his joints for about 10 years." R. 1551. Christopher reported he had lower back pain for approximately seven years. *Id.* Dr. Humphries' physical examination noted Christopher's back showed tenderness to palpation in the thoracic-lumbar region without deformity or spasm; his joints in his lower extremities revealed no significant deformity, but his knees and ankles showed tenderness to palpation. R. 1553. Dr. Humphries diagnosed Christopher with,

11

*inter alia*, polyarthralgia[7] and chronic lumbar strain. *Id.* Dr. Humphries opined Christopher could sit up to six hours in an eight hour workday; walk up to six hours in an eight hour workday; and stand up to six hours in an eight hour workday. R. 1553-54.

At the ALJ hearing in January 2020, Christopher testified he had lower back pain that impaired his ability to lift objects and sit. R. 52. Christopher's lower back pain forced him to change positions every 10 minutes. R. 52-53. When Christopher sat too long, his back started to hurt, and his legs fell asleep. R. 53. Christopher's lower back pain required him to frequently change positions, and he had to move around for 10 minutes before he could sit down. *Id.* Standing also caused Christopher pain, and standing too long triggered his asthma, which required him to sit down and use his inhaler. *Id.* Christopher testified he sometimes had to lie down for 30 minutes during the day because of his back pain. *Id.*

Significantly, the ALJ found Christopher's degenerative disc disease of the lumbar spine was a severe impairment since December 19, 2018, R. 21, and the ALJ's finding bolsters the court's finding that Christopher's ability to sit, walk, and stand are relevant functions. Given the evidence summarized above and Christopher's contention that the ALJ failed to perform function analyses of his ability to sit, walk, and stand, (Pl.'s Br., at 37-38), I find Christopher's ability to sit, walk, and stand is a relevant and contested function.

### 3. The ALJ Failed to Perform Function Analyses of Christopher's Ability to Sit, Walk, and Stand

---

[7] Polyarthralgia is defined as "pain in two or more joints." *Polyarthralgia*, Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://www.merriam-webster.com/medical/polyarthralgia (last visited June 9, 2026).

As explained below, I find the ALJ failed to conduct function analyses of Christopher's ability to sit, walk, and stand. R. 22-29. Below is a summary of the ALJ's RFC assessment. *Id.*

The ALJ summarized Christopher's testimony that he had pain due to degenerative disc disease of the lumbar spine, and he was winded after walking more than 10-15 minutes, so he avoided walking hills or stairs. R. 22-23. Moreover, the ALJ acknowledged Christopher's function reports where he noted he could walk, but lower back pain prevented him from engaging in his former hobbies, and he wore a back brace because of his lower back pain. R. 23.

The ALJ summarized a September 2016 magnetic resonance imaging (MRI) scan of Christopher's lumbar spine, and the MRI scan "showed multilevel degenerative changes with right foraminal protrusion at the L2-L3 level contributing to abutment of the exiting right L2 nerve root laterally (Exhibit 7F/4). There was also moderate facet hypertrophy at the T12-L1 level contributing to abutment of bilateral exiting T12 nerves." R. 24.

The ALJ summarized evidence showing Christopher had a full range of motion and was able to engage in his daily activities. *Id.* However, the ALJ summarized other medical records where Christopher had "a decreased range of motion in his lumbar spine and tenderness was noted in the neck, back, shoulders, elbows, wrists, hands, knees, and ankles." *Id.* At some medical appointments, Christopher "complained of pain in his joints and lower back." *Id.* Some medical records showed a gait and range of motion within normal limits, but a computed tomography scan "showed mild degenerative disc disease," R. 25, and he had "showed mild degenerative disc disease." *Id.* The ALJ summarized medical records showing Christopher had "tenderness of the paraspinal muscle in the

13

lumbar back." *Id.* At medical appointments, Christopher reported "low back pain with lifting more than 20 pounds and with repeated movement." *Id.*

The ALJ summarized medical opinion evidence from Brian Strain, MD, Bert Spetzler, MD, Howard Leizer, Ph.D., and Dr. Humphries. R. 27-28. The ALJ noted Dr. Strain opined Christopher could perform light exertional work. R. 27. According to the ALJ's review of Dr. Spetzler's medical opinion, Christopher could occasionally perform postural activities, but he could frequently balance. *Id.* The ALJ found physical examinations showed Christopher had "an antalgic gait and reduced strength in the lower extremities." R. 28. The ALJ noted Dr. Humphries' medical opinion that Christopher could sit, stand, or walk for six hours out of an eight hour workday. *Id.*

I find the ALJ summarized a significant amount of evidence about Christopher's ability to sit, walk, and stand. R. 22-29. However, a "mere recitation of the claimant's treatment history will not suffice; rather, the ALJ must 'build a logical bridge between the evidence of record and her conclusions.'" *Bright v. Berryhill*, No. 1:16-cv-459, 2017 WL 2693513, at *4 (M.D.N.C. June 21, 2017), *report and recommendation adopted*, No. 1:16-cv-459, 2017 WL 3263125 (M.D.N.C. July 31, 2017) (quoting *Martin v. Berryhill,* No. 1:16-cv-171, 2017 WL 728234, at *4-6 (M.D.N.C. Feb. 23, 2017)). Relatedly, ALJs "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, *7; *see also Gilliam v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-0007, 2024 WL 6917583, at *6 (E.D.N.C. Mar. 28, 2024) ("remand is warranted due to the ALJ's failure to provide explanation in the written decision to reconcile the inconsistencies in the evidence relevant to the ALJ's findings").

Here, because Christopher's ability to sit, walk, and stand are relevant and contested functions, I find that the ALJ should have provided function analyses **explaining** his findings about Christopher's ability sit, walk, and stand. Moreover, I find it is appropriate to remand because the ALJ failed to explain how he reconciled inconsistent evidence in the record regarding Christopher's ability to sit, walk, and stand. *See Green v. Berryhill*, No. 1:15-cv-00273, 2017 WL 1206014, at *7 (W.D.N.C. Mar. 30, 2017) ("remanding because the ALJ failed to perform a function analysis of the claimant's ability to sit, walk, and stand, despite "contradictory evidence in the record regarding Plaintiff's ability to walk, sit, and stand and for what length of time" (citing 20 C.F.R. § 404.1567); *see also Dean C. v. Bisignano*, No. 1:24-cv-01446, 2025 WL 2050731, at *4 (D. Md. July 22, 2025) ("[h]ere, the ALJ's failure to acknowledge (and reconcile) substantial portions of the medical record warrants remand") (citing *Hawkins v. Saul*, 796 F. App'x 159, 161 (4th Cir. 2019)). Simply acknowledging conflicting evidence exists, without more, is not sufficient.

Also, according to the Social Security regulations, light work "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Importantly, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Jennifer S. v. Bisignano*, No. 5:24-cv-00071, 2025 WL 2388607, at *4 n.4 (W.D. Va. Aug. 15, 2025) (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1986)). Here, the ALJ found Christopher could perform "light work." R. 22. As a result, the ALJ found Christopher could stand or walk for six hours out of an eight hour workday. I find the ALJ should have provided an explanation of this finding given the evidence that Christopher had difficulties with sitting, standing, and walking partially because of his severe impairment of degenerative

15

disc disease of the lumbar spine. R. 21. "[E]ven reading the ALJ's decision as a whole, the ALJ never explained how he concluded, based on the summarized evidence, that claimant could *actually* perform the tasks required by light work, such as standing or walking for about six hours during a normal eight-hour workday." *Christy L. W. v. Comm'r of Soc. Sec.*, No. 7:24-cv-00760, 2025 WL 4095854, at *14 (W.D. Va. Dec. 29, 2025) (emphasis original and brackets omitted) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023)), *report and recommendation adopted sub nom. Christy W. v. Commissioner of Soc. Sec.*, No. 7:24-cv-760, 2026 WL 259622 (W.D. Va. Jan. 29, 2026). As a result, on remand the ALJ should explain how he reconciled inconsistent evidence and how Christopher can stand or walk for six hours out of an eight hour workday.

For the court to review an ALJ's decision for substantial evidence, the ALJ must first adequately explain her or his findings and reasoning. *See Jennifer S. v. Dudek*, No. 6:24-cv-4601, 2025 WL 4230464, at *5 (D.S.C. Mar. 26, 2025) ("'[a] necessary predicate to engaging in substantial evidence review is a record' that adequately explains the ALJ's findings and reasoning") (quoting *Dowell v. Colvin*, No. 1:12-cv-1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015)). "Remand is appropriate if the ALJ's analysis is so deficient that it 'frustrates meaningful review.'" *Timothy F. v. Kijakazi*, No. 7:22-cv-174, 2023 WL 5733882, at *1 (W.D. Va. Sept. 5, 2023) (quoting *Mascio*, 780 F.3d at 636) (brackets omitted and cleaned up). As noted above, "remand is warranted when a <u>contested</u> function, as compared to an irrelevant or uncontested function, is not properly discussed and evaluated by the ALJ in determining the claimant's RFC." *Christy L. W.*, 2025 WL 4095854, at *15 (emphasis in original) (citing *Dowling*, 986 F.3d at 388–89).

16

Here, as a summary, the ALJ failed to conduct function analyses of Christopher's ability to sit, stand, and walk. Moreover, the ALJ failed to explain how he reconciled inconsistent evidence in the record regarding Christopher's ability to sit, walk, and stand. Relatedly, the ALJ also failed to provide an adequate explanation about his finding that Christopher could of stand or walk for six hours out of an eight hour workday, despite his severe impairment of degenerative disc disease of the lumbar spine. Thus, the ALJ has frustrated meaningful judicial review, so remand is warranted.[8]

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be

---

[8] Plaintiff made several arguments on appeal. (Pl.'s Br., at 32–48.) Because the court has determined that the ALJ erred as discussed above, the court declines to further address Plaintiff's remaining arguments. However, upon remand, the ALJ should examine all of Plaintiff's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: June 29, 2026

C. Kailani Memmer
United States Magistrate Judge

18